UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LEXINGTON DIVISION

**CIVIL ACTION NO. 05-185-JBC**

**TERRY HALL,**                                                                                                            **PLAINTIFF,**

**V.**                          **MEMORANDUM OPINION AND ORDER**

**MLS NATIONAL MEDICAL EVALUATIONS, INC., et. al.**              **DEFENDANTS.**

\* \* \* \* \* \* \* \* \* \*

This matter is before the court on the defendants' motion for summary judgment. The court, having reviewed the record and being otherwise sufficiently advised, will grant the motion in part and deny it in part.

**I.    FACTS:**

This dispute centers around the alleged alteration and transmission of a report of an independent medical examination, which affected the plaintiff's eligibility for long-term disability benefits. The facts of this case are complex and disputed. Accordingly, this factual summary, which details only those facts relevant to the disposition of the instant motion, is presented in the light most favorable to the plaintiff, who is the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).

The plaintiff, Terry Hall, worked for Sonoco Products, Inc. from 1999 through 2001. In 2001, he began experiencing back problems and, later that year, started receiving long-term disability benefits under the terms of his company's long-term disability plan (the "Plan"). In 2003, to ensure that he still qualified for

benefits, the Plan administrator, Wausau Benefits ("Wausau"), asked Hall to submit to an independent medical examination. Wausau contracted with the defendants, who facilitated the examination. In turn, the defendants contracted with Dr. James Templin, who examined Hall and prepared a written report. Rather than have Templin send this report directly to them, the defendants requested that Templin dictate his findings via the telephone. This dictated report was then transcribed and forward to Wausau. However, this report differed from that prepared by Templin in several respects. Hall claims that the defendants intentionally altered Templin's report to make it appear that Hall was no longer disabled under the terms of the Plan. Chief among these alterations was the inclusion of the statement, "Mr. Hall would be most suitable for sedentary work."

Wausau relied on the defendants' work product and terminated Hall's benefits. After a successful administrative appeal, Hall's benefits were reinstated. However, this process was not without cost to Hall, who hired an attorney using a contingency-fee agreement. Because Hall believes that his benefits would not have been suspended if not for the defendants' actions, he has brought suit alleging an array of statutory and common-law torts. His chief item of damages is his attorney's fees – one-third of his future disability benefits – from the administrative appeal. The defendants argue that they are entitled to summary judgment on all of Hall's claims. Specifically, they argue that Hall's claims are preempted by the Employee Retirement Income Act ("ERISA"), and that, in any case, Hall cannot

2

establish a *prima facie* case as to any of his state law claims.

## II.  Standard of Review

"Summary judgment is proper where there are no genuine issues of material fact in dispute and the moving party is entitled to judgment as a matter of law." *Browning v. Levy*, 283 F.3d 761, 769 (6th Cir. 2002) (citing Fed. R. Civ. P. 56(c)). "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses . . . ." *Celotex Corp.*, 477 U.S. at 323. In deciding the motion, the court must view the evidence and draw all reasonable inferences in favor of the non-moving party. *Id.* A judge is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). A genuine issue exists only when there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Browning*, 283 F.3d at 769 (quoting *Anderson*, 477 U.S. at 252).

## III.  ERISA Preemption

ERISA preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a). These include state laws "that (1) mandate employee benefit structures or administration; (2) provide alternate enforcement mechanisms; or (3) bind employers or plan administrators to particular choices or preclude uniform administrative practice, thereby functioning as a regulation of an ERISA plan itself." *Briscoe v. Fine*, 444

3

F.3d 478, 497 (6th Cir. 2006); *Penny/Ohlmann/Nieman, Inc. v. Miami Valley Pension Corp.*, 399 F.3d 692, 698 (6th Cir. 2005). ERISA does not preempt "traditional state-based laws of general applicability that do not implicate the relations among the traditional ERISA plan entities," nor does it preempt state-law claims brought against a non-ERISA entity merely because that entity provided service to an ERISA-governed plan. *PONI*, 399 F.3d at 698 (6th Cir. 2005). *See also Marks v. Newcourt Credit Group*, 342 F.3d 444, 452-53 (6th Cir. 2003). Moreover, ERISA does not preempt a state-law claim merely because a plaintiff seeks to recover from a non-ERISA entity those benefits that he would have enjoyed but for that entity's tort. *Marks*, 342 F.3d at 453.

The defendants in this case are not among the traditional Plan entities. They do not exercise management, authority, or control over the Plan or its assets. Nor do Hall's claims implicate any of the Plan entities. Rather, Hall alleges that the defendants transmitted a false report to the Plan administrator, and that this report caused the Plan administrator to terminate his benefits. Hall does not seek redress for the wrongful denial of benefits under the terms of the Plan. Instead, he alleges that the defendants breached an independent duty not to transmit fraudulent information. Such claims are not preempted by ERISA. *Cf. Briscoe*, 444 F.3d at 398.

The defendants offer three arguments in favor of preemption. First, they argue that the plaintiff's claim for damages – recovery of the one-third contingency

fee arrangement – is an improper attempt to circumvent ERISA and its fee-shifting provisions. Second, the defendants cite to a line of cases[1] which hold that ERISA preempts almost all common-law claims. Finally, the defendants cite *Curry v. Cincinnati Equitable Ins. Co.*, 834 S.W.2d 701 (Ky. App. 1992) to argue that the plaintiff's statutory claims are preempted.

Nothing requires a plaintiff to pursue a remedy against any particular defendant. It is not a defense to point the finger at another entity. That a plaintiff might have a claim under ERISA against an ERISA entity does not preclude him from bringing state law claims against a non-ERISA entity. Nor does a plaintiff improperly circumvent ERISA by referencing an ERISA plan. *See Marks*, 342 F.3d at 453; *Wright v. Gen. Motors Corp.*, 262 F.3d 610, 615 (6th Cir. 2001). Additionally, the cases cited by the defendant are distinguishable in that they deal with benefits owed under the terms of an ERISA plan. In this case, the plaintiff claims a right to damages as a result of an independent breach of a duty of care. Similarly, *Curry* holds that ERISA preempts statutory claims where the plaintiff has filed suit against a traditional ERISA-plan entity. It does not extend to cases, such as this one, where the plaintiff seeks to recover from a non-ERISA entity. As ERISA does not preempt the plaintiff's claims, the defendants are not entitled to summary judgment for this reason.

---

[1] The defendants cite *Tolton v. Am. Biodyne, Inc.*, 48 F.3d 937 (6th Cir. 1995)*; Cromwell v. Equicor-Equitable HCA Corp.*, 944 F.2d 1272 (6th Cir. 1991); *Corcoran v. United Healthcare, Inc.*, 965 F.2d 1321 (5th Cir. 1992); *Gibson v. Prudential Ins.*, 915 F.2d 414 (9th Cir. 1990).

**IV.     Intentional Interference With Contractual Relations**

To recover for intentional interference with contractual relations, the plaintiff must prove that the defendants' actions caused a pecuniary loss. Restatement (second) of Torts §§ 766, 766B *cited by Nat'l Collegiate Athletic Ass'n v. Hornung*, 754 S.W.2d 855, 857-58 (Ky. 1988) (defining the tort). The defendants argue that a subsequent vocational assessment – not the transmission of an allegedly fraudulent report – caused the cessation of benefits. The defendants also note that Dr. Templin "read, reviewed, [and] signed" the allegedly fraudulent report. In response, Hall argues that the vocational assessment was consistent with, and therefore influenced by, the fraudulent report. Moreover, when Wausau initially communicated that it was terminating Hall's benefits, it referenced the allegedly fraudulent report. Additionally, Dr. Templin agreed that certain changes in the report were significant. Because there are unresolved questions of material fact about whether the fraudulent report influenced the decision to terminate benefits, summary judgment is inappropriate on this claim.

**V.      Outrage**

The tort of outrage – also known as intentional infliction of emotional distress – has four elements. First, conduct must be intentional or reckless. Second, conduct must be outrageous and intolerable in that it offends against the generally accepted standards of decency and morality. Third, there must be a causal connection between the offending conduct and the emotional distress

6

suffered by the victim. Fourth, the emotional distress must be severe. *Stringer v. Wal-Mart Stores*, 151 S.W.3d 781, 788 (Ky. 2004). Liability attaches only where the offending conduct is so extreme as to exceed "all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." *Id.* at 789. It is the court's job to determine whether the defendant's conduct approaches the threshold. However, where reasonable people could disagree as to whether the threshold has been crossed, the court must permit the finder of fact so to determine. *Id.* at 788-89 (Ky. 2004); *Whittington v. Whittington*, 766 S.W.3d 73, 74 (Ky. App. 1989). *See also* Restatement (second) of Torts § 46 cmt. h.

Hall argues that the defendants' behavior in this case was so atrocious as to constitute outrageous conduct, and compares his case to *Kroger v. Willgruber*, 920 S.W.2d 61 (Ky. 1996). In *Kroger*, the outrageous conduct involved a manager's "plan of attempted fraud, deceit, slander, and interference with contractual rights, all carefully orchestrated in an attempt to bring [the plaintiff-employee] to his knees." *Id.* at 67. There, the outrageous conduct occurred in retaliation for a plaintiff-employee's refusal to participate in certain activities that he thought were unethical and against company policy. Although the retaliation included interference with the plaintiff-employee's ability to receive disability benefits, the manager's reasons for interfering were personal, and his tactics included slander so derogatory that the Kentucky Supreme Court refused to repeat it. *Id.* at 63, 66-67.

In this case, the defendants are charged with altering the report of an

independent medical examination. This activity, if true, is no cause for commendation and, ultimately, may result in liability for other torts. However, the conduct alleged in this case does not rise to the level condemned in *Kroger* as there is no indication that the defendants acted out of malice, or with the goal of "bringing Hall to his knees." Rather, if Hall's allegations are true, the defendants' conduct is akin to that in *Whittington*. In that case, the court held that theft of a check and improper disposition of funds in a bank account was not outrageous, even though this activity caused severe financial hardship to the plaintiff. 766 S.W.2d at 73-74. Accepting Hall's allegations as true for the purposes of this motion, the defendants' conduct was not so severe as to exceed all possible bounds of decency. Therefore, the defendants are entitled to judgment as a matter of law on this claim.

**VI.     Fraudulent Misrepresentation**

Fraud requires proof of six elements: there must be (1) a material representation; (2) which is false; (3) known to be false or made recklessly; (4) made with the inducement to be acted upon; (5) acted in reliance thereon; and (6) resulting injury. *Wahba v. Don Corlett Motors, Inc.*, 573 S.W.2d 357, 359 (Ky. Ct. App. 1978). The defendants argue that they are entitled to summary judgment on this claim for the same reasons that they are entitled to judgment on the claim for intentional interference with contractual relations. Specifically, they argue that there is no proof that the allegedly fraudulent report caused Wausau to terminate Hall's

benefits. For reasons mentioned in Section IV of this opinion, because there are issues of material fact as to whether, and to what extent, the report influenced Wausau's decision, summary judgment is inappropriate on this claim.

**VII.    Breach of Fiduciary Duty; Concealment and Nondisclosure**

A fiduciary relationship is "one founded on trust or confidence reposed by one person in the integrity and fidelity of another and which also necessarily involves an undertaking in which a duty is created in one person to act primarily for another's benefit in matters connected with such undertaking." *Steelvest, Inc. v. Scansteel Serv. Ctr., Inc.*, 807 S.W.2d 476, 485 (Ky. 1991). The parties disagree as to whether the defendants had a fiduciary duty to Hall, who argues that such a relationship was created when he consented to a medical examination arranged by the defendants. Absent citation to authority, the court does not credit this argument. The defendants were asked by Wausau to obtain an independent medical examination, not to act primarily for Hall's benefit. No fiduciary relationship existed. Accordingly, the defendants are entitled to summary judgment on Hall's claim for breach of a fiduciary duty.

Hall also argues that the defendants are liable under the Restatement (second) of Torts § 550.[2] Kentucky has not adopted this section of the

---

[2] "One party to a transaction who by concealment or other action intentionally prevents the other from acquiring material information is subject to the same liability to the other, for pecuniary loss as though he had stated the nonexistence of the matter that the other was thus prevented from discovering." Restatement (second) of Torts § 550.

Restatement, and there is no indication that Kentucky courts would do so. Nevertheless, even if Kentucky had adopted § 550, there is no indication that Hall was a party to a transaction with the defendants. Therefore, the defendants are entitled to summary judgment on these claims.

**VIII.   Negligent Misrepresentation**

Kentucky has adopted the tort of negligent misrepresentation as defined in the Restatement (second) of Torts § 552.[3] *Presnell Constr. Managers, Inc. v. EH Constr., LLC*, 134 S.W.3d 575, 580-82 (Ky. 2004). This tort allows those who rely on information to recover pecuniary damages from a negligent purveyor of that information. *See* Restatement (second) Torts § 552 cmts. e-h. Hall argues that the defendants committed this tort when they provided a fraudulent report to Wausau knowing that the report would affect his ability to receive long-term disability benefits. These allegations, even if true, are insufficient to sustain a claim for negligent misrepresentation, as Hall did not rely on any of this information to his detriment. Accordingly, the defendants are entitled to summary judgment on this claim.

---

[3]   "One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information. . . ."
Restatement (second) of Torts § 552.

10

**IX.    Bad Faith and K.R.S. §§ 304.12-230; 304.12-010**

In his complaint, Hall alleges that the defendants violated K.R.S. §§ 304.12-230 and 304.12-010. However, he has since conceded that the defendants did not violate §12-230 as they are not in the business of entering into contracts of insurance. *Davis v. Am. Freightways, Inc.*, 25 S.W.3d 94, 102 (Ky. 2000). Therefore, the defendants are entitled to summary judgment for the claim arising under §12-230 and for the corresponding tort of bad faith. *Id.* Although Hall agrees that the defendants did not violate §12-230, he maintains that the defendants violated §12-010, which states that "[n]o person shall engage in . . . an unfair method of competition or any unfair or deceptive act or practice in the business of insurance." The business of insurance includes "aiding . . . any person or insurer in the . . . investigation or adjustment of claims or losses." K.R.S. § 304.11-030.

The defendants argue that they are not in the business of insurance and, therefore, have not breached any duties under the Kentucky Insurance Code, K.R.S. ch 304. *See Davidson* 25 S.W.3d at 95-98 (Ky. 2000). Hall argues that the defendants engaged in an unfair or deceptive act by sending a fraudulent report to Wausau in connection with the investigation of his continuing claim for benefits. Whether the defendants' alleged conduct – sending a fraudulent report to Wausau knowing that this report would affect his claim for benefits – is an unfair or deceptive act presents a disputed question of fact. Therefore the court will not grant summary judgment on this issue.

**X.      Fraudulent Insurance Act: K.R.S. § 304.47-020**

The defendants argue that they are entitled to summary judgment on this claim because the Fraudulent Insurance Act ("FIA"), K.R.S. § 304.47-020, requires a criminal adjudication of guilt before a party may file a civil action. K.R.S. § 304.47-020(3).[4] Hall agrees that § 47.020(3) creates a specific remedy in those situations where there has been a criminal conviction, but he argues that a criminal conviction is not a prerequisite to the filing of a civil action. The court does not agree with this interpretation of the FIA.

It is an elementary principle of construction that a court must read a statute in such a way that no word, clause, or sentence is superfluous, void, or insignificant. *Brooks v. Lexington-Fayette Urban County Housing Auth.*, 132 S.W.3d 790, 811 n.4 (Ky. 2004). Applying this rule to the instant statute, "when there has been a criminal adjudication of guilt" are words of limitation, as they state when a plaintiff may bring a civil action. To read the statute otherwise would be to make those words superfluous. Therefore, because the FIA requires a criminal adjudication of guilt before a party may recover damages in a civil action, and because there has been no criminal adjudication of guilt, the defendants are entitled to summary judgment on this claim.

Hall also argues that K.R.S. §446.070 allows him to pursue a civil remedy

---

[4] "Any person damaged as a result of a violation of any provision of this section when there has been a criminal adjudication of guilt shall have a cause of action to recover compensatory damages, plus all reasonable investigation and litigation expenses, including attorneys' fees, at the trial and appellate courts."

despite the FIA's requirement of a criminal adjudication of guilt. Ordinarily, §446.070 allows a person injured by the violation of a statue to recover damages that he sustained because of the violation. *State Farm Mut. Auto. Ins. Co. v. Reeder*, 763 S.W.2d 116, 117 (Ky. 1988). However, where the statute provides a specific civil remedy to an aggrieved party, that party is limited to the remedy provided by the statute. *Id.* at 118.

**XI.    Punitive Damages**

A plaintiff may recover punitive damages from a tortfeasor who acts maliciously, willfully, or with a wanton or reckless disregard for the lives, safety, or property of others. *Horton v. Union Light, Heat, & Power Co.*, 690 S.W.2d 382, 389 (Ky. 1985). The defendants argue that punitive damages are inappropriate because they did not alter the report, and that there is no causal connection between their alleged actions and the cessation of Hall's benefits. However, for reasons stated earlier in this opinion, a jury could find that the defendants' actions did, indeed, cause Hall's damages. Moreover, the jury could find that the defendants acted willfully, maliciously, or with reckless disregard for Hall's rights. Therefore, the defendants are not entitled to summary judgment on this issue.

**XII.   Consumer Protection Act**

The Kentucky Consumer Protection Act ("KCPA") protects consumers from unfair, false, misleading, or deceptive acts in commerce. K.R.S. §§ 367.170, 367.220. The KCPA was designed to give Kentucky consumers the broadest

possible protection from illegal acts. *Stevens v. Motorists Mut. Ins. Co.*, 759 S.W.2d 819, 821 (Ky. 1988). However, the KCPA does not apply where there is no privity of contract between the parties. *Skilcraft Sheetmetal, Inc. v. Kentucky Machinery, Inc.*, 836 S.W.2d 907, 909 (Ky. Ct. App. 1992). As Hall had no contractual relationship with the defendants, the defendants are entitled to summary judgment on this claim. Accordingly,

**IT IS ORDERED** that the defendants' motion for summary judgment (DE 42) is **GRANTED IN PART** and **DENIED IN PART** in accordance with this opinion.

Signed on August 15, 2006

*Jennifer B. Coffman*
JENNIFER B. COFFMAN, JUDGE
U.S. DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY