**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**CENTRAL DIVISION**
**LEXINGTON**

Eastern District of Kentucky
**FILED**

FEB 2 7 2008

AT LEXINGTON
LESLIE G WHITMER
CLERK U S DISTRICT COURT

CIVIL ACTION NO. 05-185-JBC

TERRY HALL,                                                                    PLAINTIFF,

V.                          <u>MEMORANDUM OPINION AND ORDER</u>

MLS NATIONAL MEDICAL
EVALUATIONS, INC., et. al.,                                        DEFENDANTS.

\* \* \* \* \* \* \* \* \* \*

This matter is before the court on the defendants' motion to disqualify

plaintiff's counsel.  DE 125.  The court, having reviewed the record and being

otherwise sufficiently advised, will deny the motion.

**Background**

This dispute centers around the alleged alteration and transmission of a

report of an independent medical examination, which affected the plaintiff's

eligibility for long-term disability benefits.

The plaintiff, Terry Hall, worked for Sonoco Products, Inc. from 1999

through 2001.  In 2001, he began experiencing back problems and, later that year,

started receiving long-term disability benefits under the terms of his company's

long-term disability plan (the "Plan").  In 2003, to ensure that he still qualified for

benefits, the Plan administrator, Wausau Benefits ("Wausau"), asked Hall to submit

to an independent medical examination.  Wausau contracted with the defendants,

who facilitated the examination. In turn, the defendants contracted with Dr. James Templin, who examined Hall and prepared a written report.

Two reports, which differed in important respects, resulted from the plaintiff's examination by Dr. Templin. In particular, one of the reports stated that "Mr. Hall would be most suitable for sedentary work" while the other did not. The report with the finding that the plaintiff would be suitable for sedentary work was recounted to the plaintiff by his case manager at Wausau when she called him on January 6, 2004. The plaintiff asserts that she also told him his benefits would be cancelled because of the report, but it became apparent to him during this conversation that there were two reports. The plaintiff and the Wausau case manager then exchanged reports and the Wausau case manager subsequently testified in deposition that she used the report which did not adjudge the plaintiff fit for sedentary work from on or about January 12, 2004. The plaintiff alleges that the other report, which adjudged him fit for sedentary work, resulted from an intentional alteration by the defendants to make it appear that he was no longer disabled under the terms of the Plan.

The plaintiff retained M. Austin Mehr as counsel on January 9, 2004, and signed a contingent-fee agreement stating his counsel would receive 33 1/3% of the sum recovered by settlement prior to suit being filed or settlement or verdict after suit is filed, which would increase to 40% if appealed. The agreement also stipulated that in the case of recovery the plaintiff would reimburse Mr. Mehr for

2

certain "out-of-pocket expenses." The plaintiff's benefits were subsequently

denied on May 31, 2004. Mr. Mehr contacted Dr. Templin on October 1, 2004.

On October 5, 2004, Dr. Templin wrote a letter stating that the plaintiff was totally

disabled, and benefits were reinstated by Wausau pursuant to his appeal soon

thereafter. The plaintiff has asserted causes of action against the defendants that

include a claim for compensatory damages for the attorneys' fees for which the

plaintiff is liable under the contingent-fee agreement.

The defendants have identified Mr. Mehr and his former associate, Wesley

Deskins, as witnesses in this case. The defendants assert that "[t]heir testimony

will be necessary to establish that the fee agreement with Mr. Hall is not

reasonable and therefore not an appropriate measure of damages in this case. They

will also be questioned regarding the failure of Mr. Hall or his representatives to

take steps to mitigate his damages." DE 125-2, 4.

## I.    Legal Standard

Motions to disqualify are governed by two sources of authority. *Republic

Servs., Inc. v. Liberty Mut. Ins. Co.*, 2006 WL 3004014, at *4 (E.D. Ky. Oct. 20,

2006). First, all attorneys are bound by the local rules of the court in which they

appear. *Id.* Thus, pursuant to Local Rule 83.2(a)(4), the attorneys of record in this

action are subject to the Kentucky Rules of Professional Conduct and the judicial

decisions interpreting those Rules. Second, since motions to disqualify affect

substantive rights of the parties, such motions are decided by applying standards

3

developed under federal law. *Bartech Indus., Inc. v. Int'l Baking Co., Inc.*, 910 F.

Supp. 388, 392 (E.D. Tenn. 1996).

## II. Analysis

### A. Attorney as Witness

"[D]isqualification is a drastic measure which courts should be hesitant to

impose except when absolutely necessary. Disqualification separates a party from

the counsel of his choice with immediate and measurable effect." *Zurich Ins. Co.*

*v. Knotts*, 52 S.W.3d 555, 560 (Ky. 2001). Rule 3.7 of the Kentucky Rules of

Professional Conduct states as follows:

> (a) A lawyer shall not act as an advocate at trial in which the lawyer is
> likely to be a necessary witness except where:
>
>> (1) The testimony relates to an uncontested issue;
>>
>> (2) The testimony relates to the nature and value of legal
>> services rendered in the case; or
>>
>> (3) Disqualification of the lawyer would work a substantial
>> hardship on the client.

SCR 3.130 (3.7). "[A] major source of prejudice is the likelihood that the jury will

confuse the attorney as a witness with the attorney as an advocate," *id.* cmt. 2,

and "[i]t may not be clear to a jury whether a statement by an advocate-witness

should be taken as proof or as an analysis of the proof." *Zurich*, 52 S.W.3d at

559-60. Therefore, "a balancing is required between the interests of the client and

those of the opposing party." SCR 3.130 (3.7) cmt. 4.

When a court balances these interests, however, "disqualification of an

4

attorney sought to be called as a witness for the opposing party is subject to a more stringent standard because 'a litigant may call his or her opponent's attorney as a trial tactic, seeking to disqualify the attorney from the case.'" *Id.* at 559 (quoting *Warrilow v. Norrell*, 791 S.W.2d 515 (Tex. App. 1989)).  Moreover, where a party is calling the opposing party's counsel as a witness, "'[t]here must be a genuine need for the attorney's testimony, which should be material to the movant's case as well as prejudicial to the interests of the attorney's client . . . .'" *Id.* (quoting *Gilbert McClure Enterprises v. Burnett*, 735 S.W.2d 309, 311 (Tex. App. 1987)).

Here, the defendants wish to call Mr. Mehr, who represents the plaintiff, to testify.  Therefore, the defendants are seeking to call opposing counsel themselves and, in addition to the general concerns with disqualifying a party's counsel of choice, this situation triggers the more stringent standard where an opposing party seeks to call a party's counsel to testify.  Moreover, finding new counsel at this late date in the litigation would obviously create a substantial hardship for the plaintiff.  Because the defendants have not shown that their calling of Mr. Mehr would be prejudicial to the interests of the plaintiff and Mr. Mehr's testimony would "relate[] to the nature and value of legal services rendered in the case," SCR 3.130 (3.7)(a)(2), the court finds that the Kentucky Rules of Professional Conduct do not preclude the testimony of Mr. Mehr in this matter.

Two cases cited by the defendants do not compel disqualification.  In

*Warrilow v. Norrell*, 791 S.W.2d 515 (Tex. App. 1989), a Texas court found that

the exception for hardship "generally contemplates an attorney who has some

expertise in a specialized area of law, such as patents, and the burden is on the

attorney seeking to continue representation to prove distinctiveness." *Id.* at 520

(citation omitted). However, the Kentucky Supreme Court has rejected *Warrilow*'s

reasoning that the problem of an "attorney-witness vouching for his own

credibility, which is seemingly unfair to opposing counsel" requires disqualification

"because cross-examination by a skilled adversary should be sufficient to test the

credibility of any lawyer who is a witness." *Zurich*, 52 S.W.3d at 559. Similarly,

the other out-of-state case cited by the defendants, *North High, Limited v.*

*Cincinnati Ins. Co.*, 650 N.E.2d 869 (Ohio 1995), "is distinguishable because the

attorney listed himself as a witness for his own client." *Zurich*, 52 S.W.3d at 559.

Therefore, neither of these cases is persuasive to the court.

### B.   Conflict of Interest

The defendants also cited a purported conflict of interest between the

plaintiff and Mr. Mehr as grounds for Mr. Mehr's disqualification. Specifically, the

defendants argue that it would be improper for Mr. Mehr to represent the plaintiff in

this matter at all because the plaintiff may later object to the reasonableness of the

contingent-fee agreement.

The general rule regarding conflicts of interest states the following:

(b) A lawyer shall not represent a client if the representation of that
client may be materially limited by the lawyer's responsibilities to

6

another client or to a third person, or by the lawyer's own interests, unless:

> (1) The lawyer reasonably believes the representation will not be adversely affected; and

> (2) The client consents after consultation. When representation of multiple clients in a single matter is undertaken, the consultation shall include explanation of the implications of the common representation and the advantages and risks involved.

SCR 3.130 (1.7). There is no reason to question whether Mr. Mehr reasonably believes his representation of the plaintiff will be adversely affected by their agreement and the plaintiff has filed an affidavit stating that he consents to Mr. Mehr's serving as his attorney, that he believes the agreement "provides for a very reasonable attorney's fee," and that he does not want another attorney. *See* DE 131-4. It would only be proper for Mr. Mehr to ask for the plaintiff's consent if "a disinterested lawyer would conclude that the client should not agree to the representation under the circumstances," SCR 3.130 (1.7) cmt. 4, but the defendants have not come forward with any evidence suggesting a disinterested lawyer would conclude the plaintiff should not have consented. Therefore, after reviewing the plaintiff's affidavit and the contingent-fee agreement, the court finds that the plaintiff's consent dispenses with any potential conflict of interest.

The case cited by the defendants, *Wompold v. Guirard*, 442 F.3d 269 (5th Cir. 2006), deals with a situation where the attorney and his client are in conflict over the award. In fact, that is the central dispute in the case. Therefore, the court finds this case is not comparable to the situation at hand. Consequently, the

defendants' conflict-of-interest argument for disqualification also fails.

**III.   Conclusion**

Accordingly,

**IT IS ORDERED** that the defendants' motion, DE 125, is **DENIED**.

Signed on February 27, 2008

Jennifer B. Coffman, Judge
United States District Court

8