UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LEXINGTON DIVISION

**CIVIL ACTION NO. 05-185-JBC**

**TERRY HALL,**     **PLAINTIFF,**

**V.**     <u>**MEMORANDUM OPINION AND ORDER**</u>

**MLS NATIONAL MEDICAL EVALUATIONS, INC., et. al.**     **DEFENDANTS.**

\* \* \* \* \* \* \* \* \* \*

This matter is before the court on the defendants' second motion for summary judgment. DE 126. The court, having reviewed the record and being otherwise sufficiently advised, will deny the motion.

**I.**     **Facts**

This dispute centers around the alleged alteration and transmission of a report of an independent medical examination, which affected the plaintiff's eligibility for long-term disability benefits. The facts of this case are complex and disputed. Accordingly, this factual summary, which details only those facts relevant to the disposition of the instant motion, is presented in the light most favorable to the plaintiff, who is the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).

The plaintiff, Terry Hall, worked for Sonoco Products, Inc. from 1999 through 2001. In 2001 he began experiencing back problems, and later that year started receiving long-term disability benefits under the terms of his company's long-term disability plan (the "Plan"). In 2003, to ensure that he still qualified for

benefits, the Plan administrator, Wausau Benefits ("Wausau"), asked Hall to submit to an independent medical examination. Wausau contracted with the defendants, who facilitated the examination. In turn, the defendants contracted with Dr. James Templin, who examined Hall and prepared a written report. Rather than have Templin send his report directly to them, the defendants requested that Templin dictate his findings via the telephone. This dictated report was then transcribed and forwarded to Wausau. However, this transcribed report differed from that prepared by Templin in several respects. Hall claims that the defendants intentionally altered Templin's report to make it appear that Hall was no longer disabled under the terms of the Plan. Chief among these alterations was the inclusion of the statement, "Mr. Hall would be most suitable for sedentary work."

Subsequent to Templin's examination of Hall and the defendants' transmission of the transcribed independent medical examination ("IME") report to Wausau, Hall's case manager at Wausau, Lorraine Prebeg, informed him he was being referred to CorVel Corporation ("CorVel") for a vocational assessment. CorVel never performed an on-site assessment of Hall. The vocational assessment case manager assigned to him, Melinda Freeman, completed her assessment on March 10, 2004. Her vocational assessment includes the finding that Hall would be "most suitable for sedentary work."

After the Templin examination and the CorVel assessment, Wausau terminated Hall's benefits. After a successful administrative appeal, Hall's benefits

were reinstated. However, this process was not without cost to Hall, who hired an attorney using a contingency-fee agreement. Because Hall believes that his benefits would not have been suspended if not for the defendants' actions, he brought suit alleging an array of statutory and common-law torts. His chief item of damages is his attorney's fees – one-third of his future disability benefits – from the administrative appeal. The court granted in part and denied in part an earlier summary judgment motion by the defendants in a memorandum opinion and order dated August 15, 2006. DE 56. The plaintiff's remaining claims are: (1) intentional interference with contractual relations, (2) fraudulent misrepresentation, (3) unfair or deceptive business practices under KRS § 304.12-010, and (4) punitive damages.

The defendants argue that they are entitled to summary judgment on all of Hall's remaining claims. Specifically, they argue that Hall cannot establish a *prima facie* case as to any of his remaining state law claims.

## II.    Standard of Review

"Summary judgment is proper where there are no genuine issues of material fact in dispute and the moving party is entitled to judgment as a matter of law." *Browning v. Levy*, 283 F.3d 761, 769 (6th Cir. 2002) (citing Fed. R. Civ. P. 56(c)). "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses . . . ." *Celotex Corp.*, 477 U.S. at 323. In deciding the motion, the court must view the evidence and draw all

3

reasonable inferences in favor of the non-moving party. *Id.* A judge is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). A genuine issue exists only when there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Browning*, 283 F.3d at 769 (quoting *Anderson*, 477 U.S. at 252).

**III.    Analysis**

    **A.    Intentional Interference with Contractual Relations**

To recover for intentional interference with contractual relations, the plaintiff must prove that the defendants' actions caused a pecuniary loss. *Nat'l Collegiate Athletic Ass'n v. Hornung*, 754 S.W.2d 855, 857-58 (Ky. 1988) (citing Restatement (Second) of Torts §§ 766, 766B)). The defendants assert that the plaintiff cannot show causation or pecuniary loss because (1) the unaltered original report, and not the altered report (which included the statement that "Mr. Hall would be most suitable for sedentary work"), was the only basis for the denial of the plaintiff's benefits; (2) the vocational assessment of the plaintiff that preceded the denial of his benefits was consistent with the unaltered original report; and (3) the plaintiff's belief that his benefits had been cancelled does not establish causation.

To support their assertion that the uncontroverted facts establish that the decision to deny the plaintiff's benefits was based entirely on Templin's unaltered

original report, the defendants point to deposition testimony in which Prebeg, Freeman, and Judy Wojcik of Wausau, who granted the plaintiff's appeal, state that Wausau and CorVel used only the unaltered original version of Templin's report in each key decision regarding the plaintiff's benefits.  The defendants also cite a facsimile copy of the unaltered original report from Prebeg found in CorVel's file on the plaintiff.  DE 126-2, 7-9.  Wausau's medical managment case notes from January, 6, 2004, the same day the plaintiff was referred to CorVel for a vocational evaluation, state, however, that "Mr. Hall would be most suitable for sedentary work."  DE 133-11, 2.  As the plaintiff notes, a reasonable jury could conclude from these facts that Hall would not have even been referred for a vocational evaluation but for the altered report, leaving aside the issue of whether Freeman relied only on the unaltered orginal report in making her assessment.  Therefore, there are genunine issues of material fact as to this first argument by the defendants.

The defendants also cite Templin's statement in deposition that the plaintiff "would be most suitable for sedentary work" is consistent with both reports because, being disabled, Hall would be more suitable for sedentary work than for any other form of work.  DE 126, 9-10.  Specifically, they point to Templin's statement that "[h]e would be more suitable for sedentary work than for other types of manual labor or work activities where he had to stand, bend, et cetera.  So in that sense it would not be false."  DE 126-4, 5-6.  Moreover, Templin stated he

5

"would not criticize" Freeman in finding the plaintiff could perform some jobs but "I would have had a question on sedentary work." DE 126-4, 3-4. As noted above, however, even assuming Freeman did nothing wrong, a reasonable jury could find the plaintiff would not have even been referred to Freeman in the first place if not for the altered report. Therefore, there are genunine issues of material fact as to this second argument by the defendants.

     Finally, the defendants argue that the plaintiff's mistaken belief that his benefits had been cancelled on January 6, 2004, does not establish the causation element of his claims (his benefits were not cancelled until June 1, 2004). DE 126-2, 10-11; DE 136, 5. As the plaintiff notes, however, his need for legal counsel occurred only as a result of the defendants' actions. DE 133, 5. The plaintiff stated in deposition that his decision to hire an attorney was driven by his finding out about the altered report:

> What made a difference is the existence of a phony report, as I said before, indicated to me clearly that we're not all playing on top of the table. I had to hire a lawyer. Now, if they would have received a correct report and then decided to terminate benefits, I would have got ahold of the little booklet and found where I had to file an appeal and I'd have done that, just like I filed a request for my Social Security.

DE 133-9, 12-13. A reasonable jury could rely on this testimony about the plaintiff's decision to hire an attorney in concluding that the defendants' actions in altering Templin's report caused him to incur attorney's fees when his benefits were denied and then reinstated subsequent to his learning of the false report and hiring an attorney to help him protect his rights. Therefore, there are genuine

6

issues of material fact as to this third argument by the defendants.

Due to these disputed material facts, the defendants are not entitled to a judgment as a matter of law as to the plaintiff's claim for intentional interference with contractual relations.

### B. Fraudulent Misrepresentation

Fraud requires proof of six elements: (1) a material representation; (2) which is false; (3) known to be false or made recklessly; (4) made with the inducement to be acted upon; (5) acted in reliance thereon; and (6) resulting injury. *Wahba v. Don Corlett Motors, Inc.*, 573 S.W.2d 357, 359 (Ky. Ct. App. 1978) (citing *Cresent Grocery Co. v. Vick*, 240 S.W. 388 (Ky. 1922)).

The defendants again argue that no reasonable jury could find that the plaintiff has established the essential element of causation. For the reasons stated in reference to the plaintiff's claim for intentional interference with contractual relations, this argument is unavailing. Therefore, the defendants are not entitled to a judgment as a matter of law as to the plaintiff's claim for fraudulent misrepresentation.

### C. KRS § 304.12-010

KRS § 304.12-010 states that "[n]o person shall engage in . . . an unfair method of competition or any unfair or deceptive act or practice in the business of insurance." The business of insurance includes "aiding . . . any person or insurer in the . . . investigation or adjustment of claims or losses." K.R.S. § 304.11-030.

The defendants again argue that no reasonable jury could find that the plaintiff has established the essential element of causation.  Again, for the reasons stated in reference to the plaintiff's claim for intentional interference with contractual relations, this argument is unavailing.  Therefore, the defendants are not entitled to a judgment as a matter of law as to the plaintiff's claim for unfair and deceptive business practices under K.R.S. § 304.11-030.

**IV.     Punitive Damages**

The defendants correctly assert that the plaintiff should not be entitled to punitive damages if he cannot establish an underlying claim for which compensatory damages are available.  See *Lawrence v. Risen*, 598 S.W.2d 474, 476 (Ky. Ct. App. 1980) ("It has long been held that '(t)he correct rule . . . is that if a right of action exists that is, if the plaintiff has suffered an injury for which compensatory damages might be awarded, although nominal in amount he may in a proper case recover punitive damages.'") (citing *Louisville & N. R. Co. v. Ritchel*, 147 S.W. 411, 414 (1912)).  However, since the court has found that the plaintiff has come forward with enough evidence to support a finding that he "has suffered an injury for which compensatory damages might be awarded," the defendants are not entitled to judgment as a matter of law as to the plaintiff's claim for punitive damages.

**V.      Conclusion**

Accordingly,

**IT IS ORDERED** that the defendants' second motion for summary judgment, DE 126, is **DENIED**.

Signed on  April 8, 2008

JENNIFER B. COFFMAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCY